Okay. Counsel, will you please approach the podium, both sides. Tell us who you are and who you represent. James T. Derrico, Jr., on behalf of Ulich Children's Advantage Network, which is UCAN, and Ms. Darlene Sowell. Thank you, Counsel. Good morning, Your Honor. My name is Zach Chacon, and I represent National Union Fire Insurance Company of Hartford, and the AIG domestic client. I might say I apologize for being late. We were here, and we want to discuss another case. I apologize for that. Thank you. Proceed, Counsel. Thank you, sir. I presume, of course, that we've read everything we have. Thank you. I'll stick to your most important points that you've considered, and we will ask you questions if we have concerns about other points. Thank you, Judge. Good morning. As I stated for the record, my name is James T. Derrico, Jr., and I'm here on behalf of Ulich Children's Advantage Network, which I'll refer to as UCAN, and Ms. Darlene Sowell. The issue presented in this case really concerns whether AIG or National Union Insurance had an obligation to provide coverage for UCAN and Ms. Sowell for claims alleged in a federal lawsuit filed by a former UCAN employee, Mr. Andrew Leonard. Outside of the notice issues, there's no dispute that the claims alleged in Leonard's federal lawsuit are the types of claims covered by the second policy. When I refer to the second policy, it is the policy that was in place from July 1, 2005, until June 30, 2006, and can be found on pages A34 through A43 of your appendix. When UCAN and Sowell first got notice of the federal lawsuit, which was filed on September 29, 2005, they received notice of the summons and complaints on October 10, 2005. You said they received notice. How was that notice? How did they receive the notice, Judge? Yes, it was served, I believe, by mail, because it was a federal case and there was a waiver of service of summons. So it wasn't writing? I'm sorry? It wasn't writing? That they received notice? No, they received the actual claim. UCAN received a copy of the summons and the complaint on October 10, 2005. On that very same day, they tendered the claim or they delivered the claim to National Union through its agent, AIG Domestic Claims. And they forwarded the actual document? That is correct. And I believe on page A44 of the appendix, there's a copy of a letter from AIG Domestic Claims acknowledging receipt of the complaint and summons on October 10, 2005. Can I ask a question, Counsel? Yes. The EEOC suit, or when they went to EEOC to say that they were going to file the suit, which I guess went back to July 31, 2005, during the 31st policy period? Correct. Okay. That went to UCAN. Did it also go to Darlene Sowell? And how was she tied in to that January 31, 2005 action? Okay. Yes. The EEOC claim was filed January 31, 2005. It was a claim that only alleged that UCAN, not Ms. Sowell, violated Mr. Leonard's rights under the ADA. There was no allegation in the claim that there had been any violation of the Federal, of the Family Medical Leave Act. As a matter of fact, the EEOC does not even have jurisdiction to hear those claims. There's no dispute in this case that Mr. Leonard's FMLA claims were not and could not have been made before the EEOC. There's also no dispute that Mr. Leonard's EEOC charge did not include Ms. Sowell, nor could it have included Ms. Sowell. So Ms. Sowell was first made a claim, first made a defendant in the Federal lawsuit, which was filed in September 2005 and noticed to AIG in October 2005. Okay. So then in your opinion, then, would there be an obligation in reference to UCAN with that EEOC charge? Would there be an obligation that UCAN was then given notice at that point in time? If they wanted coverage for the EEOC charge, but it does not follow that the lack of notice of the EEOC charge precludes coverage for the subsequent ADA lawsuit or definitely not the subsequent FMLA claim. Because... The human resources vice president continually questioned me about the timing of my return to work, even though I explained I could not give her a definite return date until I saw my doctor on December 30th. Well, first and foremost, even if you think that's directed at Ms. Sowell, she was the vice president of human resources. However, the ADA does not permit an employee to sue an officer director. They can only sue the employer. And the EEOC cannot entertain FMLA claims. And furthermore, the amended charge I believe is dated July 13th, 2005, which is the second policy period. So even if somehow Ms. Sowell can be roped into that, even though it seems to be impossible under Federal law, it was still the second policy period. But as to the company itself, you're alleging that the first period would still cover her, even though the first policy from July of 04 to July of 05 should cover, even though no claim was made? No. We're saying it's the second policy period, Your Honor. So you concede that the first policy provides no coverage? That's correct. And moving to that, we get to the notice provision in the policy. It only required the notice be given as soon as practicable. And we're talking about the Federal lawsuit or the claims raised in that lawsuit. And it's clear that they were given as soon as practicable. And where the issue, the hotly debated issue here is the wrongful related acts. But if you look at the actual policy language, it doesn't provide for what my opponents would like you to read into it. It only says that claims arising out of related wrongful acts are excluded if they've been previously reported. Not if they could have been reported, not if they should have been reported, but if they in fact had been reported. And the exclusion provision of the policy in Sections 4C talks about related wrongful acts, but again, it talks about claims arising out of related wrongful acts that have been previously reported. It doesn't say could have or should have. They're asking the Court to rewrite the policy or interpret the policy in a light most favorable to the insurance company, neither of which we believe this Court can do. The other exclusion in the policy is in 4D. That talks about basically claims that were pending prior to the continuity date, which can be found on page 830. The continuity date is July 1, 2005. And obviously if you look at the EEOC chart, excuse me, Leonard was terminated in December of 2004. So clearly it was after the continuity date of July 1, 2001. So now the exclusions apply. The claims in the federal lawsuit fall within the coverages provided by the policy. There's nothing in the wrongful related acts language that actually precludes these claims. My opponents contend, well, it's our goal to get notice of these things as soon as possible, but that's not what the policy says. And if that were their goal, that should have been in the policy. They're asking this Court to rewrite the policy. There's nothing in the policy that says that all the claims arising out of a series of related wrongful acts, in this case, all the claims arising out of Leonard's termination constitute a single claim. It's not there. The other thing is there's nothing in the policy that says that all of the claims arising out of the related wrongful act relate back or must be reported when a claim is first made. It says that they date back to the policy year in which a claim is first reported. Now, I would like to, if for some reason this Court can... So your argument, then, is even though the claim arose or the bad act which was alleged, which is the basis of the claim, arose in December of 2004, since he did not, the suit was not filed until September of 2005, this claims made policy still covers the claim in September, right? That is correct. Because if you look at the definition of claims in the policy, a claim is merely a written demand for monetary relief. Surely. Well, what's the best case that cites, stands to the proposition that in the claims made policy, when an alleged bad act occurs, or an occurrence, I would say, occurs, that you can then, the date for the claims made policy, you consider whether or not that you don't care when the act occurred, but rather when the claim was first filed. Just cite such a case. I'm sorry, I'm... Just cite a case that stands to the proposition that you're arguing today, which is that even though the alleged bad act, the occurrence here occurs in December of 2004 when he's terminated. He sues on it, but he doesn't sue on it until September of 2005. Correct. Your argument is that the claims policy that your client had, the insured had, would cover such a claim anytime, as long as he had insurance in effect at the time the claim is filed, in this case in September. Do you have a case that would say that? I do not, but I do state the proposition that the policy says that it's claims made during the policy period. That's what the policy says. And the federal lawsuit was filed during the second policy period. So even though you can see that the occurrence occurred, the termination, any alleged bad act would have occurred in December of 2004. Your argument is, to your early hope, as to your corporate client, is that if a claim is made policy, that includes when the claim is made. Well, it does occur when the bad act occurred, and it absolutely can't, Judge, because if, for example, every time someone got terminated, you have to give notice, even though they don't file a claim. I mean, the termination of an employee Well, you want an occurrence policy. You have all sorts of policies. And if you want to have a claims made policy in the employment context, bad things can happen. And I do. I'm not being difficult. I'm just trying to I'm just trying to explain the concept. It's claims made, not when wrongful acts occurred. You seem to be concentrating on the employee, not the organization. No. Well, I'm actually arguing for both. But I'm talking about when the claim was made. The federal lawsuit was filed in the second policy period. The policy covers claims made during the policy period. And that is all we're arguing. And we're saying that even though we understand the EEOC charge was made in an earlier period, there's nothing that mumps the EEOC charge with the federal lawsuit in such a way that it precludes or nullifies coverage for the federal lawsuit. That's what's not in the policy. And, again, it's not when the wrongful act occurs. It's when a claim is made for the wrongful act. Well, they say Grimen, that's how you pronounce it, for the opposite proposition, that a claims made policy is characterized by coverage for a negligent act or remissions only if such are discovered during and brought to the attention of the insurer within a policy term. And that frankly makes a lot of sense. And otherwise, okay. With respect to Grimen, number one, the biggest problem with Grimen with respect to its application here, when the claim was made against, I believe he was an architect, there was no policy in place. The policy was long gone. There was no policy in place. When Leonard filed his federal lawsuit, when Leonard first filed his FMLA claims in his federal lawsuit in September of 2005, there was a policy in place. In Grimen there was not. Claims made policies cover claims made during the policy period. The federal lawsuit was made during the policy period. Now, I understand that the act that gave rise to that, but I do not believe the policy requires that you can also report the firing of Leonard. It's only when Leonard filed a claim. And there's nothing in the policy that says that more than one claim, that all the claims related from Leonard's termination constitute a single claim. Well, that's certainly true. It's a sole. But again, besides Grimen, you've got Baker & McKenzie, which also clearly holds that's a federal case, that the claims first made, in that case, claims made in year one, but they were filed in the second year, meaning a suit was filed in the second year. Now, well, there's no coverage for the bad act that occurred in year one of the policy. And that leads me to the second part of my argument. The problem with Baker & McKenzie, it's a case in which the insurance company did what they were supposed to do. They filed a declaratory judgment act. And all we're saying is, when we get to our duty to defend argument, is we don't know what would have happened if National Union had filed a declaratory judgment action, but they didn't. And if you look at the duty to defend issue, there's a couple of very important points that need to be made. The first one is AIG adamantly argues that if you look at the policy, it says they assume no duty to defend. And the policy also provides that the insurer can tender defense of the claim to the insurance company. However, it is our position that the duty to defend that AIG is talking about in its policy is different from the duty to defend that our Supreme Court talked about in outboard marine. In outboard marine, our Supreme Court basically said if the claims made, if the claims made by, for example, Leonard, fall within the coverage that's provided by the policy, there's a duty to insure. The policy, an issue here, basically is a policy that talks about who's going to manage the litigation, who's going to pick the lawyers. Because even if you can in Seoul decide to manage the litigation and pick the lawyers, AIG is still going to pay the defense costs. Even, however, even if you don't agree with my analysis of outboard marine versus its policy, in Cincinnati companies, the court said once the insurer had actual notice of the claim, the duty to defend is triggered. And just because the duty to defend is triggered does not deny the insurance company the right to bring a deck action or defend under Reservation of Rights. It merely triggers the duty to defend. And clearly on October 10, 2005, AIG or National Union had notice of the duty to defend. It's actual notice of Leonard's claims. Copy of the sum is a copy of the complaint. And they did nothing. They abandoned their insured. And finally, with respect to the duty to defend, another hotly debated issue in this case is whether or not our Supreme Court's decision in employers' insurance of Wausau versus Elko, the Elko case, and the federal district court for this district's decision in Sullivan House, do they, does the Elko holding that the late notice defense, the affirmative defense of late notice is not available as a bar to the estoppel doctrine, does it apply to claims made policies? I submit to this Court that there's nothing in the Elko case that limits it to claims occurred. I'd also like to point out that if you look at Elko, the Court rejects decisions, rejects the holdings that provide an exception of late notices for liability insurance policies. In the decision, the Court does not say claims occurred, it says liability insurance policies. And additionally, if you look at the Court's analysis in the Sullivan House case, that was the federal court for the northern district of Illinois applying Illinois law, they said Elko makes no distinction in either case. They said Elko makes no distinction in either case. And I believe that is the wiser holding, because why would we allow insurers of claims made policies to abandon their insurers? Nothing in Elko and nothing in Cincinnati companies takes away from the insurer the right to file a declaration or the right to defend under reservation of rights. Those are still available. Counsel, you said earlier, you talked about it, you said that Sowell could not be sued under the EEOC or the ADA. That is correct. I do not. But I do not believe that that was an ‑‑ I don't think that's been a disputed issue. But it would be under the American with Disabilities Act. Thank you, counsel. May it please the Court, as I said earlier, my name is Zach Chacon. I represent National Union Fire Insurance Company of Hartford and AIG Domestic Claims. I wanted to take issue right off the bat with a repeated description by Mr. Derrico of the nature of this policy. This is not a claims made policy. I think that that understates what the policy coverage is with regard to this policy. This is a claims first made and reported policy. And I think that that's a significant difference here. The policy specifically provides coverage and in fact states this several times in the policy for claims first made and reported during the policy period of the policy in effect at the time the claim is made. As I proceed in my argument, I think ‑‑ Regarding so well only, there was no claim made in the first claim directed to the Illinois Department of Human Resources. Where is so well covered under that claim? Well, Your Honor, the policy, as I said, requires that the claimant or that the insured report the claim within the policy period. Only if the insured reports the claim within the policy period in which the claim is made is their claim, is their coverage for subsequent related claims. Ms. Solis, the claim against ‑‑ Yes, sir, the American Solidarity case, I believe it is, yeah. That case basically held as we are arguing here, which is that the subsequent claim against the individual employed by the company was a related claim under the policy. Is there a slight difference I think you can see between the American language contract and the contract in this case? Well, in looking through the American Solidarity case, Your Honor, it was kind of difficult to figure out where they were getting policy language because they don't really specify where the policy language is coming from. I believe in my brief I've laid out in some detail the similarities between the language and the AIG policy and the ‑‑ They're similar but not at all the same. They're similar but I believe with regard to material matters they are identical. I mean, they both reference related claims. They both are claims first made in reported policies. And the court in the American Solidarity case, which again is a Federal District Court case, rules that the claim against the employee was a related claim that should have been reported in order for coverage to be affected during the policy period in which the claim was made. First time so well herself, you'll concede, was not notified in January and not even in July of 2005. Again, Your Honor, this was on a motion to dismiss under 2615. The allegations of the complaint and the exhibits attached there to indicate that the original EEOC charge was directed only against UCAN. So I don't know if it's necessary for me to concede that but that's what the exhibit was. But as I understand, first time so well knew anything about the charges filed against her personally was when she received a copy of the complaint. Well, again, that is the allegation in the complaint. I would say that that is the allegation of the complaint and we must accept the allegation of the complaint on a motion to dismiss in any event. So is it your position that Solol is of this moment? And again, I'm not asking you to concede that you're going to cover Solol but that that issue is somehow not in front of us? No, Your Honor. I do believe the issue is in front of you. I'm just suggesting that since this was on a 2615 motion, we aren't conceding any factual issues but we must obviously accept the allegations that were in the complaint. And the allegations in the complaint were that Solol was not notified until the suit was filed against her. With regard to American Solidarity, you suggested in your brief just now that you don't know where they got the language from, reading from it. The Federal policy, however, specifies that, quoting, all interrelated wrongful acts of any insured shall be deemed one loss, et cetera, et cetera. Unquote. Citing Federal policy clause 6 or section 6. The policy is in another description, another quote. Federal policy section 22. So it seems that language comes from the policy. Well, I understand that it comes from the policy. I'm sorry, Your Honor, I didn't mean to. No, no, go ahead. I understand that it comes from the policy. The problem that I had with the case was not so much in, I mean, I understand that they're citing two specific paragraphs in the policy, but obviously the location of certain language in the policy depends, is instructive as to what the intent of that language is. There is certainly that interrelated language that the Court just quoted. We have very similar language in our policy, albeit not in a location that Plaintiff's counsel would believe makes it applicable in this case. But the language that is indicated in the American Solidarity case also exists in our policy. The question that I had is where the Court, what was that language applicable to in that policy? Going back to the Yevgromen and Baker-McKenzie on your side, the idea that a claim is made policy, but again, if you say your argument is really based on this is a claim is first made and reported, and under the definition that would be the occurrence or the alleged bad act had to occur within the policy term. Would that be right? No, Your Honor. I believe that the wrongful act had to have been, had to have resulted in a claim of which the insured was aware within the policy period. Okay. Here, the claim of which the insured was aware was the initial EEOC charge back in January of 05. Apologize if I got that wrong.  I think CUDA is probably the strongest case on that. But in looking at CUDA, again, it's professional policy, and it's difficult for me to see where the bad act occurred. The claim was first made September 15th of 95. There was a policy in effect at that time. But it's hard for me to figure out when the bad act occurred. Again, I don't think, well, for purposes of our argument, and I don't think that, and I believe the same would apply for purposes of the argument in CUDA and the holding in CUDA, the timing of the bad act itself is not what we're looking at. It's when the claim is first made and reported. Here, in fact, I believe the policy specifically provides, well, first of all, it identifies a claim as including an EEOC charge. It specifically references employment. I don't think that the timing of that. But CUDA, I think, frankly, is almost identical to our case. I mean, we have two policies there. We have a lawsuit filed under the first policy period but not reported until the second policy period. And the court, this court in CUDA, addresses almost exactly the same arguments presented here by UCAN and rules that there's no coverage underneath the policy because the claim was filed during the period of the first policy but not reported until during the period of the second policy, therefore not compliant with the provisions of the policy requiring that the claim be reported in the policy year in which the claim is made. Well, their argument then would seem to be on the insurance side. And again, they don't raise it in this legal term. It claims to be this type of policy in this field would be somewhat illusory in that how often would it be? So they are certainly aware when the EEOC complaint is filed that there's something amiss. But as you said as well, the solution, under your argument, the only way they would ever be covered for that is every time they fire somebody, they have to notify their insurer and say, by the way, I fired a guy and he might file an EEOC complaint.  I think that if you look at the definition of a claim under the policy, what they are required to report is fairly clear and does not require that they report every incident where there's the potential for a claim. Now, if they are aware of a claim or of a situation that may potentially turn into a claim, they are welcome to report it to the company, at which point they have a safe harbor. All subsequent claims arising out of that initial incident, whatever it is that they reported to the company, are then covered. But the policy doesn't require that they report every time that they fire someone. It requires that they report claims. And I'll direct the Court's attention to the definition of claim, which is at C-79, I believe.  Claim includes a written demand for monetary relief, a civil, criminal, regulatory, or administrative proceeding for monetary or non-monetary relief, which is commenced by the receipt or filing of notice of charges. When the EEOC charge came in, and I don't think there's any question that it was served. In fact, it is alleged that it was served on UCAN. If they had reported that claim at that time, all subsequent claims arising out of that initial claim would have been covered under the original policy. They did not do that. It is clear that they did not, that they conceded that they did not report any aspect of this claim until October of 2005, which is during the term of the second policy. The claim did not first arise during the term, the claim was not first made during the term of the second policy, and therefore is not covered under the term of the second policy. Dan, can you explain to us why we shouldn't follow ELCO's holding that late notice defenses act to, disagreeing with WASA's contention that it's late notice defenses act to excuse its failure to take either of the actions of filing reservation of rights or going to court. I think there's, I apologize, I think there's several ways that ELCO can be distinguished. I think the first of which is something that I heard repeatedly from UCAN's counsel, and that is that the policy in ELCO provided or required that notice be provided as soon as practical. UCAN takes the position that that was the only requirement in our policy. That is not the only requirement in our policy. In fact, with regard to notice, the policy specifically requires that the notice be provided as soon as practicable and any time during the policy year or during the discovery period. The discovery period is not applicable here, but certainly any time during the policy year, that provision did not exist in the policy that was being looked at in the ELCO decision. Second point, which I think is a valid point that was raised in Graman, in fact, I think it is a crucial point that was raised in Graman, and that is that the ELCO policy was an occurrence-based policy. An occurrence-based policy, in order to determine the existence of a duty to defend, the only thing that you look at is the complaint and the underlying litigation and the policy itself. If there is a potential for coverage based upon an examination of the policy and the complaint, then a duty to defend arises if a duty to defend is provided for in the policy. That is not the situation with regard to a claims-made policy or a claims-first made and reported policy. As Graman pointed out, a condition proceeding to coverage is the requirement that the under a claims-made policy is the requirement that the claim be made and reported during the policy period in which the claim is made. That means that if the claim is not first made and reported during the policy period in which the claim is made, there is no potential for coverage. If there is no potential for coverage, there could never be a duty to defend, even if a duty to defend existed in the policy. That's the holding in Graman. I will point out that the first, what, 16 years or more? I understand, but it's still good law. In fact, it was cited as recently as the Corrigis decision by this Court. Right, but in terms of the late notice issue, do you think Graman is still good law? When Elko says the exact opposite, do you have a case that agrees with your theory under Elko that Elko does not apply to claims-made policy? I don't think that there's anything. I don't think the courts have read that issue yet, frankly. I don't think that there has been a decision that specifically addresses the applicability of Elko to a claims-first made and reported policy. However, I will back. Pardon me? And I agree. Obviously, there are cases on the other side that have them as well, and they do not. It's been 10 years. It has been 10 years, but I will still fall back on the position that I took originally, and that is that Elko deals with an entirely different policy. And the reasoning of Elko, finding the existence of a duty to defend, depends on a traditional examination of the duty to defend under a liability policy, under an occurrence-based policy. In the first instance, this policy does not provide a duty to defend, so Elko is distinguishable on that basis. In the second instance, even if this policy did provide a duty to defend, that duty to defend is only triggered if there is a covered claim, and coverage only exists under this policy if the claim is first made and reported during the policy period in which the claim is made. And if it's specifically asked to be defended. And that is the second problem with the plaintiff's argument, is that this policy doesn't simply impose a duty to defend on the insurance company. It, in fact, expressly rejects any duty to defend in three different locations in the policy, but provides for a tender of a defense. But the tender of defense must be in writing, and again, must be 30 days, within 30 days of the claim having been first made against the insured. No allegations in the complaint that there was any tender in writing at any time of the defense of the underlying litigation, much less within 30 days of the claim first having been made. So the problem is if we agree with you and then write an opinion, it won't affect just this case, but all cases. So it would be for the first time in the court itself that we read ELCO the way you read it, that it doesn't really apply to claims made policies, because under the claims made policy, lack of notice is not just lack of notice. It actually never gets on policy. There's no policy. By doing that, then, what will prevent every claim insured, every insured that has claims made policies from coming in and setting our case for the proposition there's no need for them to file a debt claim. But, indeed, there's an exception, a huge, huge gaping hole in Illinois' policy requiring insurers, when they refuse to represent their insured, to go look at the court. I think that a decision, if that was the reading of a decision on these precise facts, by the bar, I think that that would be over-reading the decision. Here we have, here we are imposing, because of the nature of the policy, we're requesting that the appellate court impose and recognize and enforce, because of the nature of the policy, an additional element in the determination of whether or not a duty to defend would exist with regard to a claims first made and reported policy. That element, I think, as the facts here, and as the facts in CUDA and Corrigis and Baker and McKenzie and all the other cases established, depends for its resolution on a fairly objective set of facts. We will always know what the policy term is, almost. We will almost always know when there has been a specific claim first made. Those facts will all be as a matter of record in most cases. So I don't know that this is really going to be a decision of that kind, of the kind that the court has indicated is going to be. Well, that's true of every insurance case. Those policies don't change. Indeed, they last for centuries, if you believe it, meaning what the courts have interpreted seems to hold the liability back forever, it seems to me. Anyway, so that's the only way we could write this, correct, if we agree. In this case, your client, the insurance company, chose not to go to court for some two years. Is that right? That connection is filed by the plaintiff, insured, some two years after everything has declined. Is that right? I believe that that's roughly the amount of time. That's roughly the amount of time, yes. I suggest by us writing an opinion and saying that's okay, that there is no need. First, to rule in your favor, I think we'd have to write an opinion saying that this type of policy, based on the allegations under these facts, are that an insurer does not have to file a deck action where he's saying that the failure to notify abrogated the policy, and this is different in a claims-made policy, because the policy is not in effect. I don't think that the court is going to be required to write a new opinion. I think Graman is that opinion. In fact, that is 19 years before Elko. I understand that it's an old decision, but I don't believe that the reasoning that was employed in that case has become stale over time. It's certainly the same reasoning that is applicable here. It's not even in the Staple case. I mean, Graman? I believe that Staple was the argument that was presented in that case. I believe it is in the Staple case. I will also point out, Your Honor, that the Sullivan House case that's been cited by the plaintiff in opposition to Graman, one of the things that I thought was fairly interesting as I was rereading that case is that in Sullivan, the court made the following statement. I can find it very quickly here. Elko draws no distinction between claims-made policies and occurrence policies, nor has Federal cited any case law supporting the view that the estoppel principles affirmed in Elko apply differently to the two types of policies. Evidently, the court in Sullivan House has not cited the case that is right on point, and that is the Graman case. Otherwise, it could not have made that decision, because I don't think that any reading of the Graman case could not be a reading that indicates that the estoppel principles affirmed in Elko apply differently to the two different types of policies. I suggest to you, since Graman was 19 years prior to Elko, they're looking, Sullivan Court is commenting, that since Elko, so in the 10 years since Elko, no court in Illinois has held there's a difference between the two, that Elko should not apply to claims-made. So if it were read that way instead, would you agree that's a correct statement? I think that that's probably a correct statement. I haven't found any cases that update Elko or that otherwise indicate that Elko doesn't apply to claims-made policy. If I may, a permitted observation is what we have, and this often happens in insurance cases, and that's why, frankly, I find them fascinating, is the plaintiff's insurer is suggesting we should hold that claims-made policies, only the time starts to run, they don't need to be made, or a claims-first-made-and-reported policy doesn't matter, and then your argument is no, no, Estoppel doesn't apply, Elko doesn't apply. These are gigantic, gigantic principles of law, and there's no cases on either side. I have not found a case that addresses that issue, Your Honor. I apologize if there's a case out there. It's not your fault. Well, you know, I guess I'm reacting in some bit to the suggestion, the possible implied suggestion that there's a case out there that I haven't found. No, no, no. In research, I'm just saying. I have not seen such a case. I will, again, state that Graman has not been overruled, that the analysis conducted in Graman is certainly consistent with the analysis conducted in just about every other case, all the cases that we cited, Cuda, Baker and McKenzie, Kourigas, all of them, Graman is consistent with those decisions, and it's internally consistent, and frankly, I guess the best I can say is. But they went to court. Pardon me? The insurers there went to court. At least there was no issue that they didn't file a decade. Or if they did go to court, the insurer went to court quickly. The insurer sat on their rights for two years, and you sat on your defenses for two years, and then you come in, and frankly, again, I don't know if they're that sharp, but they did that because they knew that the clock was running under Elko against the insurer and not against the insurer. I don't think that. I just think everybody sat on it. Well, you know, let me approach this from the, let me approach this. Maybe I can address the Court's concerns from another perspective. Again, Elko depends on the Court having found the existence of a duty to defend in the policy. This policy, that is the first step in their argument. This policy does not impose a duty to defend on a national union. So to the extent that the Court is concerned about the breadth of any ruling in favor of national union in this case, if that ruling starts out with this policy does not impose a duty to defend, therefore Elko does not apply. Frankly, that's the easiest response to the argument that Elko applies. This policy does not. But the notice said in October of 2005. Well, isn't that tender and you go back to Cincinnati and all, you know, aren't they asking, why would they notify if they weren't looking to be defended? Again, in order for, we're talking about express policy provisions, which my review of Cincinnati does not indicate that they were relying on any express policy provisions dealing with tender in that case. Here we're dealing with express policy provisions that specifically delineate the circumstances under which a tender can be made. And that tender must be made within 30 days of the claim first being made. And it must be made in writing. Actually, I think both sides are citing the older Cincinnati case. There's a more recent Cincinnati case which was cited in the Institute of, I don't know, what's the Institute of London? Certainly it was cited in John Burns v. Indiana Harbor, where the Court in that Cincinnati case cited the idea that it ensures a duty to defend upon notice of suit or notice of claim. Actually, they used the terms interchangeably. Practitioners know they're not interchangeable, but the Supreme Court apparently didn't. So in that case, I think what they were saying was that, you know, when the insurer knows about it, he better defend it. And I don't know. I may have to look it up. I don't think we were to write the case the way you're suggesting. So we say here there was no duty to defend because the policy required a specific written request, essentially a written request that we defend them. So if we try and parse it out along those lines, that's a huge hurdle I'd suggest for us to reach, that I think the Supreme Court in their wisdom back in Cincinnati, what I call Cincinnati II, which will be 2003 Cincinnati, don't like that. You know, if the insurer heard about it, they're on the hook. And whether it be a claim or a suit. So on your argument that, no, but this is different because it's a specific language in the policy, saying, no, no, we need written tender, what's your best case in, say, in the last ten years saying that's right, that you can do that, that such a requirement will be upheld by a court? Any case in the last ten years you can say. Let me see if I can understand. So the proposition that an insurer who's aware of a suit but has not received a written tender can use that as a defense to not defend. I don't know if I can come up with a case that says that specifically, Your Honor, but I think that that is, there's an unspoken premise in that statement that counsel for UCAN has also urged on this Court, and that is that the duty to defend exists somehow independent of its contractual provisions. That somehow the duty to defend that was recognized in the Cincinnati case and in the Elko case is a creation of the judiciary, that it is something that's imposed on the policy. That is not the case. In order for there to be an argument under either Elko or Cincinnati companies, there first has to be a duty to defend. This policy does not contain a duty to defend. So I think that if you only decide a case, I don't think that there is a case that specifically says what I'm saying. But since the policy provides no notice, no duty to defend, and since Elko expressly states that the first thing that it must do is determine whether there is a duty to defend, I'd say that Elko doesn't apply, and that's fairly simple. As a secondary argument, I think that the types of, and this is in response to the Cincinnati argument and the tender, the type of tender language, actually the absence of tender language, I think that was reflected in the Cincinnati company's case, the original Cincinnati company's case, is substantially different. In fact, as far as I'm aware, there is no policy provision that actually requires tender, or at least there's no traditional policy provision. It's the notice provisions in the policy that are usually used in arguing, as the insurance companies did and Cincinnati companies, that there's a requirement of tender. Those notice provisions don't say anything about tender in general terms. Here, on the other hand, we have an express policy provision that says that while we don't have any defense obligation, the insured can tender it to us so long as it exercised that right within 30 days, and so long as it exercised that right in writing. The policy is clear. The policy is clear and ambiguous. I guess I could cite all of the cases that say that a clear and unambiguous policy term is going to be enforced as written, but, I mean, that is the fact of the matter. That is what the case provides. The strongest argument, in fact, the only argument presented at the trial level was the Estoppel argument. I don't think, I don't see how ALCO could ever possibly be deemed to apply to this situation, particularly in light of Graman, and whether or not Graman is rejected by this Court. The reasoning in Graman, I think, applies with great force in this case. One final argument that I did want to address, actually two very final arguments, one is the applicability of the Role Print decision. Counsel takes the position that to the extent that the Court determines that there's coverage for the SOLE, for the claim against SOLE, that there necessarily must be coverage for the claim against UCAN. Role Print obviously does not stand for that proposition. Role Print stands for the proposition that where there are multiple causes of action, some of which are covered, some of which are not covered against an insured, the company is under the obligation to defend all causes of action against that insured. The case does not say anything about multiple parties, multiple insureds, and in fact, we've cited a number of cases by way of example where the Court has not announced that rule in a context where the rule would be applicable, where there was a position taken by an insurance company that a claim against one insured was not covered, but they accepted the defense with regard to other insureds. If the rule was as suggested by UCAN, that there's an obligation, if there was a defense obligation with regard to one insured to defend all the insureds, then those cases would easily have been resolved by the insurance company simply or by the Court simply announcing that rule. That is clearly not the rule. It cannot be derived from Role Print. And even if this Court determines that there was an obligation to defend SOLE under the policy, that obligation is strictly as to SOLE unless the Court also concludes that there was a separate and independent obligation to defend UCAN. Well, you cite in your brief, let me look at you, you cite CURE, K-U-R-E. What's in the site is a case called Williams, which I wrote, and Williams, I think, clearly holds that indeed, where there are separate parties, that indeed the insurer only has to defend one of the parties. In that case, CURE and Williams are cases where it's an intentional torture, and Williams is a camp driver, runs over, hits a police officer, and the cop foretells that in that case, the insurer, which has the exclusion for intentional violence, does not have to defend the camp driver. He's intentionally hit the officer and has convicted him. At the same time, they had to defend the camp company because under the theory of respondent superior or negligent, it would actually be yellow cab would only not have to be covered if yellow cab expected or intended the officer to be injured by their agent, and of course, they didn't. So we held in that case, agreeing with your position, that indeed we do split, that the insurer in that case represented both the driver and the camp company. They don't cover the driver. They only cover the camp company. In this case, the opposite. He wouldn't represent, he wouldn't keep you off the hook as you can, but you could be not conceding a right to solo. Well, I think that Williams, I thank the Court for reminding me of the case, but I think that Williams is basically another example of why the position taken by you cannot be the case. The final argument that I wanted to address is the Section 155 claim. I'm sorry. The Section 155 claim, the claim under Section 155 of the Illinois Insurance Code. The only allegations in the underlying complaint were that National Union acted vexatiously and unreasonably. I think a review of the complaint shows that there are no additional facts, just the use of those adjectives. I don't think that the use of those, in fact, I know that there's substantial case authority that we've cited in our briefs, starting, I believe, principally with Scudella, that a simple allegation that conduct was vexatious and unreasonable is insufficient to state a claim. I'm not resting my argument that the Section 155 claim must be disposed of simply on that basis, because I understand the possibility of an amendment. I think, however, that even if the Court determines that we are incorrect in submitting our analysis of coverage for either SOL or UCAN under these policies, the arguments that have been presented could not be regarded as anything other than a good faith dispute between National Union Fire Insurance Company and UCAN. And then a final argument that I presented in my brief, and I would like to again present to the Court, the standard here is whether or not there is a good faith dispute. Is there a good faith dispute between UCAN and National Union? If there is a good faith dispute, there can be no liability under Section 155 of the Illinois Insurance Code. Here we have a trial judge ruling in National Union's favor, accepting all of the arguments that were presented, which are, I believe, identical to the arguments that National Union has presented before this Court, and accepting those arguments. Under those circumstances, National Union does not believe that there could be anything other than a good faith dispute. And if this Court were to rule that there is not a good faith dispute, it would effectively be saying that the agreement by the trial judge with National Union does not evidence that there is a good faith dispute in this case. Unless the Court has further questions, I will retire. Thank you. Thank you, counsel. Thank you. Opposing counsel noted that this is a claims first made and first reported policy. However, there is nothing about this case that indicates that Mr. Leonard's FMLA claims were first made and first reported in the second policy period. There is just nothing in this case, there is nothing in the facts of this case that indicate anything to the contrary. And there is nothing in this case in any way that indicates that Mr. Leonard's claims against Ms. Stoll were not first made and first reported in the second policy period. It's just not there. Opposing counsel wants to write something into the policy, or he wants to write the American Center's language into the policy, but it's not there. The FMLA claim, both of them, against UCANN and against Stoll were first made during the second policy period when he filed his lawsuit. And again, there's nothing, even if they all arose from Leonard's termination, there's just nothing in the policy that says that all of the claims arising out of related wrongful acts constitute a single claim. It's not there. Again, that was something that was in the American Center's case. It's not in our policy. They argue adamantly there's no duty to defend, and what if they sell us? If they have no obligation to provide the coverages provided by the policy, if they want you to adopt the outboard marine definition of duty to defend, to apply here, what will we bind? You're defining a policy that would cover you had you notified them, you know, had your client notified them of the EEOC complaint. But, you know, like any other insurance company, of course, oh, had they followed the rules, we'd be glad to pay the claim. But that's what they're saying. But they're saying that if you notified us, we'd have a duty to defend. So then all they're really saying is they're asserting a late notice defense. They're not saying we don't have a duty to defend on the outboard marine. They're asserting a late notice defense. I suggest they're not. I suggest it's different than a late notice defense. Okay. I mean, even though they're saying it's a conditioned precedent to coverage. They argue they have no coverage. Yes. Okay. The other thing is there's nothing in this policy, nothing at all, that dictates the harsh result they're asking for with respect to Ms. Sewell. There's just nothing there. There's nothing in the policy that excludes or nullifies her coverage simply because UCAN did not report the EEOC claim that was not even directed to Ms. Sewell. And as we've argued, could not have been, but there's no dispute it was not directed against Ms. Sewell. And even if you look at the amended charge, which mentions the VP of Human Resources, without even having the statutory site to the ADA that excludes naming officers and directors, it's clear that the amended charge was filed in July 13th of 05 during the second policy period. With respect to the trigger of the duty to defend with respect to actual notice of the claim, the National Union is asking this court to apply the very gamesmanship the court rejected in Cincinnati Companies. In Cincinnati Companies, the court cites a case called Federated Mutual, I believe, versus State Farm, in which in that case, I believe it was this court cautioned, that when you play these games with the tender requirement, it invites gamesmanship that the insurer can play. So the poor insurer who doesn't know the policy as well as the insurer does, they send the claim to the insurance company thinking they have coverage. All of a sudden they say, no, no, no. The other issue I'd like to point out with respect to Cincinnati Companies, Cincinnati Companies' case wouldn't have existed if the insurer had tendered the claim in accordance with the policy terms. Whether it was late notice or not within a certain amount of time, the issue there was when does the tender occur, and that court found when the insurer has actual notice of the claim. So again, once they had actual notice of the, even if we're just looking at the FMLA claims, which were first made and first reported during the second policy period, it did trigger their duty to defend. With respect to the other matters, I would like to stand on my brief, but I would also point out that in Elko, the court states that Elko overrules all decisions inconsistent with it. So maybe it did overrule Graman. Thank you for your time. Thank you, counsel. Thank you. The court will be in recess. Thank you. Case under advisement.